[Cite as *State v. Cheza*, 2025-Ohio-3127.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KYLE ROBERT CHEZA,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 MA 0105

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CR 00838

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor, *Atty. Ralph M. Rivera* and *Atty. Kristie M. Weibling*, Assistant Prosecutors, for Plaintiff-Appellee

*Atty. Donald K. Pond, Jr.*, for Defendant-Appellant

Dated:  August 25, 2025

---

**WAITE, J.**

{¶1} Appellant Kyle Robert Cheza appeals a December 2, 2024, judgment entry of the Mahoning County Court of Common Pleas denying his motion to withdraw his guilty plea. Appellant contends that the trial court's decision was in error, as he established a viable defense that drugs located during the search of a vehicle belonged to his codefendant, not him. He also contends that he felt pressured into accepting the plea offer because he sought to be temporarily released from jail, and knew the only way he would be released was to plead guilty. Because the trial court's decision is reasonable based on the record, Appellant's argument is without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} On October 27, 2023, Appellant operated a vehicle on W. Indianola Street in Youngstown. He had a female passenger in the vehicle. Officer Amir Khan initiated a traffic stop of that vehicle after observing it make a turn without first using a turn signal. When Officer Khan approached the vehicle and began speaking with Appellant, he detected the odor of marijuana and inquired about the odor, causing Appellant to become defensive.

{¶3} Officer Khan ordered Appellant to exit the vehicle. At first Appellant refused, however Officer Khan was eventually able to persuade him to comply. Officer Khan conducted a pat down on Appellant's person and felt what he described as an "abnormal object" in Appellant's left pants' pocket. Based on his training and experience, Officer Khan believed that object to be packaged drugs. (Preliminary Hrg. Tr., p. 12.) When Officer Khan asked Appellant about the object, Appellant again became defensive, and

told the officer he could not search the pocket. At some point, Appellant claimed that the object was a rubber glove. As the officer could not be certain the object was contraband, he proceeded to search the vehicle. No rubber glove was discovered at any point during the proceedings.

{¶4} While Officer Khan searched the vehicle, he noticed Appellant turn away from him and say something to the female passenger. He was suspicious of Appellant's behavior and continued to watch him while completing the search. That search produced two methamphetamine pipes found underneath the passenger seat, methamphetamine found in the center console, and marijuana contained in the glove box.

{¶5} Thereafter, Officer Khan approached the two codefendants and noticed that Appellant's left pants pocket, where he felt the suspicious object during the pat down, was now turned inside out, as if an object had hastily been removed from the pocket. Officer Khan questioned Appellant about his pocket, but did not receive a satisfactory explanation. He then began questioning Appellant's codefendant, who eventually admitted that Appellant had given her the object. She then retrieved this object, methamphetamine, from a "personal area." (Preliminary Hrg. Tr., p. 17.) The codefendant was charged with possession of the two methamphetamine pipes found underneath the vehicle's passenger seat.

{¶6} On January 4, 2024, Appellant was indicted on one count of aggravated possession of drugs, a felony of the third degree in violation of R.C. 2925.11(A), (C)(1)(b), and one count of tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1), (B).

{¶7} Appellant was to appear at a pre-trial hearing on March 13, 2024, but did not appear at the scheduled time. The court issued a bench warrant for his arrest, and his bond was revoked. Appellant appeared at the court later that day and was arrested pursuant to the bench warrant.

{¶8} On March 18, 2024, Appellant pleaded guilty to aggravated possession of drugs. The state agreed to dismiss the remaining charge. In accepting his change of plea, the court held a Crim.R. 11 hearing and engaged in the appropriate colloquy with Appellant. Appellant's bond was reinstated pending his sentencing hearing.

{¶9} While awaiting sentencing, Appellant retained new counsel. On April 12, 2024, Appellant filed a motion to withdraw his guilty plea. The basis for the motion was two-fold. First, Appellant claimed to have a valid defense to the charges, as he now contended that the drugs discovered when the parties were stopped belonged to, and were in possession of, his codefendant. Second, he asserted that his only reason for entering his guilty plea was because he desired to be released from jail, and he understood the only way to secure his immediate release was to plead guilty.

{¶10} On May 14, 2024, the trial court scheduled a hearing on Appellant's motion to withdraw his guilty plea. However, Appellant again failed to appear, and a bench warrant was issued for his arrest. Apparently, Appellant appeared at some time later that day, and the warrant was recalled.

{¶11} On June 5, 2024, the court overruled Appellant's motion to withdraw his guilty plea. The court scheduled a sentencing hearing for July 18, 2024. The record is unclear whether some written or oral motion to reconsider the court's earlier decision was entered, however, the court held an additional hearing for purposes of allowing

Appellant's former counsel to testify on the issue of Appellant's request to withdraw his plea. At the hearing, Appellant declined to waive attorney-client privilege. Hence, in his testimony counsel stated only that he believed Appellant would not have been released pending sentencing if he had not agreed to plead guilty.

{¶12} On August 5, 2024, the court denied the motion to reconsider. The court scheduled a new date for the sentencing hearing, but Appellant again failed to appear for sentencing and the court issued yet another bench warrant. On November 21, 2024, Appellant's bond company sent a letter to the court which was filed in the record. The letter contained a request that Appellant's bond be revoked and the company be relieved of its duty. The company claimed it had good cause to believe Appellant was evading arrest and collecting funds to leave town. Appellant was found, arrested, and jailed pending sentencing.

{¶13} On December 2, 2024, the court sentenced Appellant to thirty-six months of incarceration with an optional two-year postrelease control period.

{¶14} After the notice of appeal was filed in this matter, Appellant filed a motion to supplement the record with his Presentence Investigation Report ("PSI"), which this Court granted.

General Law

{¶15} Crim. R. 32.1 states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶16} Crim.R. 32.1 provides a clear and demanding standard on which a postsentence motion to withdraw a guilty plea is decided, but provides no guidance for deciding a presentence motion. *State v. Xie*, 62 Ohio St.3d 521, 526 (1992). While a presentence motion to withdraw a plea is to be freely and liberally granted, the trial court must still determine "whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id*. Additionally, "a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id*.

{¶17} Any decision on a presentence motion seeking to withdraw a plea is within the sound discretion of the trial court. *State v. Cuthbertson*, 139 Ohio App.3d 895, 898 (7th Dist. 2000). An abuse of discretion entails more than an error of judgment; it implies a decision that is unreasonable, arbitrary, or unconscionable. *Xie* at 528. "[U]nless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion." *Id*. at 526. While we do evaluate the *Fish* factors on review, we may not independently substitute our judgment for the trial court's when giving weight to those factors where the trial court's use of its discretion is reasonable. *See State v. Miller,* 2019-Ohio-2157, ¶ 11 (3d Dist.) ("When applying this standard, a reviewing court may not simply substitute its judgment for that of the trial court.").

{¶18} We have adopted a non-exhaustive list of nine factors a trial court must weigh when considering a presentence motion to withdraw a plea: (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) whether the defendant understood the nature of the charges and potential sentences; (5) the extent of the hearing on the motion to withdraw; (6) whether the trial court gave full and fair

consideration to the motion; (7) whether the timing of the motion was reasonable; (8) the reasons for the motion; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Scott*, 2008-Ohio-5043, ¶ 13 (7th Dist.), citing *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist. 1995). Consideration of these factors involves a balancing test, and no single factor is conclusive. *Id*.

ASSIGNMENT OF ERROR

The trial court erred by denying Appellant's motion to withdraw his guilty plea.

{¶19} Appellant challenges the decision of the trial court by essentially asking this Court to re-weigh the *Fish* factors without giving deference to the trial court. Appellant concedes that most of the *Fish* factors weigh in favor of the state, but chooses to focus his argument on three factors: the lack of prejudice to the state, his reason for the motion, and whether he had a complete defense to the charge. As to the prejudice to the state, Appellant points out that the state failed to claim prejudice in the trial court. Appellant cites to Ohio caselaw holding that prejudice to the state will not be assumed where the state has not declared specific prejudice. As to the reasons for the motion, Appellant explains that his plea was driven by his desire to secure immediate release from jail, and he believed the only way to obtain this release was to plead guilty. As to a complete defense, Appellant contends that the state's case was limited to the theory of constructive possession, because he claims all of the drugs were found on his codefendant's person and the pipes were found underneath her seat in the vehicle.

{¶20}  The state responds that it was prejudiced by the motion because it relied on Appellant's guilty plea to offer a plea to Appellant's codefendant.  The state asserts that the codefendant was highly unlikely to testify against Appellant after securing her own favorable plea deal.  In response to Appellant's reason for the motion, the state posits that Appellant merely asserts a change of heart, as the reason for his plea was to avoid incarceration.  As to Appellant's claimed defense, the state urges that constructive possession is sufficient to convict a defendant, thus he has not alleged he has a complete defense.

{¶21}  While we will not re-weigh the *Fish* factors, here, and Appellant relies on only three, it is important to discuss the analysis as a whole.  Thus, we will review all of these factors in the context of this record.

### State's Prejudice

{¶22}  The state's response brief to Appellant's motion to withdraw his plea did not assert prejudice.  Similarly, the state did not assert prejudice during either of the motion hearings in this matter.  Where the state fails to assert prejudice, a reviewing court will not presume prejudice.  *State v. Denney,* 2021-Ohio-798 (5th Dist.).

{¶23}  While the state now contends that it would be prejudiced by the withdrawal because of the plea agreement with Appellant's codefendant which would make her less likely to testify against him at trial, this argument cannot be raised for the first time on appeal.  However, even if we were to entertain the argument, the plea agreement involving Appellant's codefendant has no bearing on whether the state would suffer prejudice, here.

{¶24}  Accordingly, this factor weighs in favor of Appellant.

*Representation Afforded to Defendant*

**{¶25}** The record is replete with evidence that Appellant was afforded competent counsel, a fact he concedes, here. Thus, this factor weighs in favor of the state.

*Extent of Crim.R. 11 Plea Hearing*

**{¶26}** Transcripts from the plea hearing demonstrate full compliance with Crim.R. 11. Again, Appellant concedes this fact on appeal. This factor also weighs in favor of the state.

*Defendant's Understanding of the Charges and Sentence*

**{¶27}** During the Crim.R. 11 colloquy, the trial court reviewed the charges Appellant faced and the possible maximum sentence he could receive. Appellant stated that he understood the charges against him and his possible sentence. Appellant concedes this factor, as well, and it weighs in favor of the state.

*Extent of the Motion Hearing*

**{¶28}** There is no question that the motion hearing was more than adequate. The trial court held not one hearing, but two, as he allowed a second hearing to permit Appellant's initial trial counsel to testify on his behalf. Appellant also concedes this factor on appeal and it weighs in favor of the state.

*Trial Court's Consideration of the Motion*

**{¶29}** Both parties filed briefs to the trial court, which also had the benefit of two hearings on the motion. There is nothing of record, and Appellant makes no argument, to show the court did not fully consider the motion to withdraw. This factor weighs in favor of the state.

*Timing*

**{¶30}** Appellant filed his motion on April 12, 2024. His sentencing hearing had been scheduled for April 25, 2024. Thus, his motion was filed thirteen days before sentencing. Also relevant is the length of time Appellant waited to file the motion after entering his plea. He pleaded guilty at the Crim.R. 11 hearing on March 14, 2024. Thus, his motion was filed twenty-nine days after entering his plea. We must note that Appellant failed to attend the scheduled May 14, 2024 motion hearing, and a warrant was issued for his arrest. However, Appellant did appear later that day and the warrant was pulled.

**{¶31}** While this delay of almost a month, and his failure to appear at the hearing, arguably weigh against Appellant, because he did file almost two weeks prior to this sentencing hearing, his delay is not necessarily unreasonable. This factor, then, weighs in favor of Appellant.

*Reasons for the Motion*

**{¶32}** In his motion to withdraw his plea, Appellant claimed that he felt pressured to accept the plea. However, Appellant concedes that his motivation in accepting the plea was based on his desire to be immediately released from jail, at least temporarily. The record reveals that Appellant had been released on a recognizance bond throughout the proceedings. He was scheduled to appear at a pretrial hearing, but he arrived late. Prior to his arrival, the court issued a bench warrant due to his failure to appear. When he arrived, he was taken into custody on the bench warrant. He states that he agreed to the guilty plea solely on the hope that he would be released from jail pending the remaining proceedings. He was, in fact, again permitted a recognizance bond and was released from jail pending disposition of the matter after entering his plea.

Case No. 24 MA 0105

{¶33} Appellant freely admits that he understood the nature of his plea and that he understood he was admitting the facts of the crime and his guilt. All of these admissions are contained in the record. He does not argue that the plea was not entered knowingly, willingly or voluntarily. Instead, he entered this guilty plea solely to gain temporary release from jail. It is clear from his own admissions that Appellant attempted to "game" the system by agreeing to a plea solely in order to be released from jail (notably, his incarceration was attributed to his own action in failing to arrive at the hearing in a timely fashion), with the intent to recant and proceed to trial or attempt to obtain a more desirable plea. By his own admission, then, Appellant's reason for asking to withdraw his plea is akin to a change of heart, which is not a permissible reason to withdraw a guilty plea. Hence, this factor clearly weighs in favor of the state, as the trial court found.

### Complete Defense or Innocence

{¶34} As to the ninth factor, the record shows that Appellant failed to assert a complete defense. Importantly, Appellant claimed that he had a viable defense of constructive possession, as the drugs were found on his codefendant's person.

{¶35} Constructive possession is by no means a complete defense. A defendant can be convicted of possession-related charges where the state establishes actual *or* constructive possession. *State v. Harrison,* 2020-Ohio-3624, ¶ 74 (7th Dist.). In other words, proof of constructive possession and actual possession are alternative methods of establishing possession, and both lead to the same result. Thus, constructive possession is not a complete defense.

{¶36} We note that Appellant's codefendant was charged and convicted of possession of the methamphetamine pipes found underneath her seat. These may not

be attributed to Appellant.  In regard to the methamphetamine found on the codefendant's person, Officer Khan's testimony at the preliminary hearing reveals the following:

> Q  . . . what, if anything did you do at that point once [Appellant] exited but the passenger was still in the car?
>
> A  I conducted a pat down.
>
> And during this I felt an abnormal object.  Through my training and experience I believe[d] it was narcotics, but he had a very thick layer of pants, so I couldn't determine it right away.
>
> So I asked him, but he became more defensive and then he advised that I was not allowed to check his pockets, which I did not.

(Preliminary Hrg. Tr., p. 12.)

{¶37}  Officer Khan also testified that Appellant told him the object in his pocket consisted of rubber gloves.  (Preliminary Hrg. Tr., p. 29.)  No rubber gloves were located in his pocket after Appellant was taken to jail and searched.

{¶38}  Following the pat down and during his search of the vehicle, Officer Khan located methamphetamine in the center console, marijuana in the glove box, and two methamphetamine pipes underneath the passenger seat.  While he searched, Officer Khan continued to watch Appellant, as the officer believed Appellant exhibited suspicious behavior.  Officer Khan testified, "[w]hen I was conducting my search, I observed [Appellant] face away from me, and he was speaking to the passenger."  (Preliminary Hrg. Tr., p. 13.)

Case No. 24 MA 0105

**{¶39}** After completing the vehicle's search, the officer approached Appellant and his passenger and noticed that Appellant had apparently discarded the object that had been contained in Appellant's pocket during his pat down.

Q  All right.  So then once you completed the search of the vehicle, what, if anything, did you do at that point?

A  I then confronted the driver, and -- [Appellant], and I observed his left pant pocket flipped outwards.

Q  Okay.  Now, why was this of a concern to you, the flipped-out pocket?

A  It was the same pocket that I felt the abnormal object that I believed that [sic] was packaged narcotics.

Q  Okay.  When you initially patted down [Appellant], what was the state of that pocket?

A  It was inwards.

Q  Okay.  And where was the pocket now when you went back to -- when you noticed him this time?

A  It was flipped out, like hanging.

Q  Okay.  And what, if anything, then did you do from that point?

A  I confronted [the passenger] and then advised her that I located the items in the vehicle, and I was going to have a female officer come check her person.

. . .

A  [The passenger] advised that [Appellant] did hand her -- hand over the drugs out of his pocket to her, and she retrieved it from her personal area and placed it in an evidence bag.

(Preliminary Hrg. Tr., pp. 16-18.)

{¶40} The evidence of record strongly suggests that Appellant had the methamphetamine at issue in his pants' pocket and removed it once he turned away from Officer Khan's direct line of sight.  He then handed the drugs to his passenger, who attempted to aid Appellant by concealing these drugs.  Appellant knew the officer would discover that he had drugs on his person after drugs were found inside the vehicle.  The passenger placed the drugs in a "personal area," where a pat down search would likely evade detection.  However, Appellant's passenger admitted to Appellant's ploy once it became clear that Officer Khan noticed Appellant's pocket was pulled out and clearly knew that drugs had been removed.

{¶41}  Importantly, Appellant also made a statement to Officer Khan admitting he owned the methamphetamine and marijuana located in the vehicle.  (Preliminary Hrg. Tr., p. 39.)  Officer Khan testified that Appellant "had asked if I could cut him a break for the meth that she had given."  (Preliminary Hrg. Tr., p. 39.)  While the body camera video is not in the record due to Appellant's guilty plea in this case, Officer Khan testified that

Appellant's incriminating statement would be audible on that video, and the video would be used against Appellant should the matter proceed to trial. In addition to the drugs it appears were in Appellant's pocket, drugs were found in the console and glove box of the vehicle Appellant was driving. Appellant obviously did not have a complete defense to offer at trial, and this factor also weighs in the state's favor.

**{¶42}** Appellant relies heavily on *Cuthbertson*. However, in another case arising from this district we cautioned that *Cuthbertson* is to be read with the understanding that no one factor on its own, including lack of prejudice to the state, is dispositive. *State v. O'Neill,* 2004-Ohio-6805 (7th Dist.). In *O'Neill,* the appellant cited *Cuthbertson* and argued that the failure of the state to assert prejudice was "an important factor." *Id.* at ¶ 32. However, this Court responded that while this factor is important, it is not dispositive. In fact, "no one factor is dispositive; rather, the trial court was to conduct a weighing of all of the factors." *Id.* at ¶ 34. As a side note, almost all of the *Fish* factors, including the assertion of a viable complete defense, weighed in favor of the appellant in *Cuthbertson.*

**{¶43}** Again, Ohio law provides that a reviewing court cannot merely substitute its own judgment for the trial court's where the trial court's use of discretion in weighing the *Fish* factors was reasonable and supported by the record. While the trial court did not provide a detailed analysis, it is apparent from this record that the court appropriately considered and weighed the nine *Fish* factors and that these factors weighed heavily in favor of the state and against allowing Appellant to withdraw his plea in this matter. The trial court did not err in denying Appellant's presentence motion to withdraw. Appellant's arguments are meritless.

Case No. 24 MA 0105

Conclusion

{¶44} Appellant challenges the decision of the trial court to deny his motion to withdraw his guilty plea.  Contrary to Appellant's arguments, he did not assert a valid reason to withdraw his plea and has failed to assert a complete defense to the charges. Because the *Fish* factors weigh heavily in favor of the state, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Hanni, J. dissents; see dissenting opinion.

Dickey, J. concurs.

Hanni, J., dissenting.

**{¶45}** With regard and respect to my colleagues, I must dissent from the majority opinion. Based on the liberal granting of motions to withdraw presentence guilty pleas and application of the *Fish* factors, I would find that the trial court abused its discretion by denying Appellant's motion to withdraw his guilty plea.

**{¶46}** I agree with the majority's discussion of nearly all of the *Fish* factors. I agree that the factor of prejudice to the state favors Appellant because the state failed to assert prejudice during either of the motion hearings. We do not presume prejudice to the State when no prejudice is articulated. *State v. Denney*, 2021-Ohio-798 (5th Dist.). Further, while the state now attempts to assert prejudice in its appellate brief, the state cannot do so for the first time on appeal. The state contends that it would suffer prejudice because it dismissed the charges against the co-defendant and she would likely be unwilling to testify as a result. However, this is not the type of prejudice contemplated by this factor. The prejudice usually considered is a situation where the state's witness is unavailable. *See State v. Cuthbertson*, 139 Ohio App.3d 895, 899, (7th Dist. Sept. 21, 2000), citing *State v. Boyd*, 1998 WL 733717, *6 (10th Dist. Oct. 22, 1998).

**{¶47}** I also agree that Appellant had competent representation, the court afforded Appellant complete and thorough plea and withdrawal of plea hearings, and the court adequately considered his motion to withdraw his guilty plea. Further, I agree that the Appellant's filing of his motion to withdraw his guilty plea was timely and he stated that he understood the nature of the charge and potential sentence.

**{¶48}** However, I disagree with the majority that Appellant's reason for withdrawing his guilty plea was inadequate and merely a change of heart. I also disagree with the majority that Appellant lacked a possible defense.

Case No. 24 MA 0105

{¶49} The majority posits that Appellant attempted to "game" the system by agreeing to plead guilty to secure his temporary release from jail. This does not translate into a mere change of heart. It was the state that offered Appellant his release from jail in exchange for his guilty plea. Prior defense counsel testified that had Appellant not pled guilty, he would not have been released. The state dangled the carrot of release in front of Appellant. Appellant contends that the only reason he changed his plea was to secure his immediate release. This does not constitute a mere change of heart or mind.

{¶50} The majority further finds that Appellant lacked a complete defense and delves into law and analysis on constructive and actual possession and the testimony presented at the preliminary hearing. The majority concludes that the record evidence "strongly suggests" that Appellant had the drugs in his pants' pocket and removed them when Officer Khan turned away. However, "the balancing test does not require the defendant seeking to withdraw his plea be able to uncontrovertibly prove his defense at the motion hearing. Instead, the balancing test asks only whether the defendant had possible defenses. Whether [a defendant] will be successful in those defenses is for a jury to decide." *State v. Jones*, 2016-Ohio-951, ¶ 29 (10th Dist.).

{¶51} Based upon the *Fish* factors and the liberal standard of granting presentence motions to withdraw guilty pleas, I would sustain Appellant's assignment of error and reverse the judgment of the trial court.

Case No. 24 MA 0105

---

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**